(143 App. Div. 248.)

## STANDARD FASHION CO. OF NEW YORK v. HENNESSY–ROBINSON CO.

(Supreme Court, Appellate Division, First Department.   March 10, 1911.)

1. SALES (§ 89*)—MODIFICATION OF CONTRACT—EVIDENCE.

In an action on a contract for the sale of fashion sheets, evidence *held* sufficient to warrant a finding that defendant had agreed to accept a new contract in place of the original contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 251;  Dec. Dig. § 89.*]

2. EVIDENCE (§ 182*)—SECONDARY EVIDENCE—PRELIMINARY PROOF.

Where defendant seeks to introduce evidence of the contents of a letter sent to plaintiff, the receipt of which plaintiff denied, evidence that defendant's president, after writing the letter, placed it in an envelope, addressed to plaintiff, affixed a stamp thereto, and placed the letter on the desk of his stenographer, whose duty it was to mail letters, is not sufficient to warrant evidence of the contents of the letter, where defendant failed to call the stenographer to testify as to her custom in the mailing of letters.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 601–604; Dec. Dig. § 182.*]

3. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

Where the evidence of the contents of a letter which defendant claimed to have sent to plaintiff, the receipt whereof was denied by plaintiff, was improperly admitted, and the evidence was of great importance, the error in its admission was not harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4153; Dec. Dig. § 1050.*]

Appeal from Trial Term, New York County.

Action by the Standard Fashion Company of New York against the Hennessy-Robinson Company. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, McLAUGHLIN, and MILLER, JJ.

James B. Sheehan, for appellant.

Frank C. Avery, for respondent.

SCOTT, J. Appeal from judgment for defendant. The plaintiff is a manufacturer of dress patterns, and the defendant for some years was its agent for the sale of patterns at Evansville, Ind., acting under written contracts. One of such contracts was dated April 10, 1905, and was for the term of two years from the date thereof, and from year to year thereafter, until the agreement should be terminated. It was further provided that either party desirous of terminating the contract must give the other three months' notice in writing within 30 days after the expiration of any contract period; the agency to continue regularly within such contract period. The defendant, on April 11, 1907, being the expiration of the contract period of two years, notified plaintiff of its intention to terminate the contract, which under the terms of the contract would have brought it to an end on July 11, 1907. This action is to recover damages for defendant's refusal to accept and pay for goods shipped to it after July 11, 1907, and is based upon the contention that before the termination of the contract dated April 11, 1905, the parties had entered into a new contract for two years from February 5, 1906, which superseded the contract of April 11, 1905.

The latter contract required the defendant to receive and pay for what are termed "Standard Fashion Sheets" to the amount of 62,500 per annum. These were to be distributed free, by way of advertisement. Defendant desired a reduction in the number of these sheets which it must purchase, and in January, 1906, wrote to plaintiff sug-

gesting that the amount should be decreased to 42,000, which would result in a saving to defendant of $125 per annum. Plaintiff consented to this reduction and prepared a new contract, similar in all respects to the former one, except as to the number of fashion sheets to be purchased by defendant annually. A dispute arose between the parties as to what date this new contract should bear; defendant insisting that it should be dated April 11, 1905, the date of the old contract, and plaintiff insisting that it should be dated February 5, 1906, the date of its execution, so that it would run until February 5, 1908. After some correspondence, which resulted in no agreement, defendant was visited in March, 1906, by one Langtree, then secretary of plaintiff, who testified that after some conversation defendant, by its president, agreed to accept the new contract dated February 5, 1906. Smith, the defendant's president, testified to the conversation with Langtree, but gave quite a different version of it, and in response to leading questions categorically denied the statement that he had finally agreed to accept the contract dated February 5, 1906. On March 17, 1906, plaintiff wrote to defendant referring to the correspondence relating to the date of the contract, and saying that it had delayed writing further until it should hear from Mr. Langtree. The letter concluded:

"We now have the report and learn that it is satisfactory to you to let the contract stand as drawn. We are therefore returning your copy."

This copy defendant never returned. Thereafter, and until July, 1907, plaintiff shipped, and defendant received and accepted without remark or objection, the reduced number of fashion sheets. Upon these facts the jury would have been amply justified in finding that defendant had finally agreed to accept the new contracts dated February 5, 1906, and one of the most cogent pieces of evidence was the letter of March 17, 1906, above quoted, taken in connection with Langtree's testimony as to his conversation with Smith, the failure of defendant to reply to the letter stating the result of Langtree's conversation as related by him, and the retention of the contract with the date of February 5, 1906. To break the force of this evidence, defendant undertook to show that it had replied to the letter of March 17, 1906, by one in which it stated that it did not desire to enter into any further contract, and that the change of fashion sheets did not imply a continuation of the contract. Neither this letter, nor any copy of it, was produced; but evidence of its contents was permitted to be given.

It is important to consider whether sufficient foundation was laid to justify the submission to the jury of the question whether or not the letter was sent. Although plaintiff denied the receipt of the letter, it is not questioned that a presumption of its receipt would arise, if it had been shown to have been mailed. The evidence of defendant's president was that he had written the letter, placed it in an envelope addressed to plaintiff, and affixed a stamp to the envelope, after which he had placed the addressed and stamped envelope on the desk of his stenographer, whose duty and general custom it was to mail letters thus left on her desk, and that such was the general course of business in the office. Upon this evidence it was left to the jury to say whether or not the letter had been mailed, and this ruling is sought to be sus-

tained by the opinion of the Court of Appeals in Hastings v. Brooklyn Life Ins. Co., 138 N. Y. 473, 34 N. E. 289. In that case the facts were somewhat similar, but there was this important difference that in the Hastings Case the porter himself was called as a witness, who testified that it was his invariable custom to mail letters deposited in the basket provided for that purpose, thus furnishing direct evidence from which the mailing might be inferred. In the absence of testimony from the person whose duty it was to mail letters so deposited, the evidence as to the all-important fact of actual mailing is in the nature of hearsay. In our opinion the failure in the present case to call the stenographer to give testimony as to her custom was quite sufficient to differentiate this case from the Hastings Case, and was also sufficient to call for the rejection of evidence as to the contents of the letter. If plaintiff did not receive the letter, as was the evidence, it is much more probable that it was not mailed, than that, having been mailed, it was not delivered, and the probabilities are that it was not delivered, because otherwise the plaintiff would scarcely have gone on for nearly a year delivering the reduced number of fashion plates. This evidence was of great importance and may well have influenced the verdict. The error in its admission cannot therefore be ignored.

Judgment and order reversed, and a new trial granted, with costs to appellant to abide the event. All concur.